MWG:SHP/MFS
F. #2025R00489

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       - against -                 Docket No. 25-CR-279 (SRU)

ANTHONY SALVATORE PERRI,

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN OPPOSITION TO
## THE DEFENDANT'S MOTION TO TRANSFER VENUE

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Stephen H. Petraeus
Matthew F. Sullivan
Assistant U.S. Attorneys
    (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant's motion to transfer venue. *See* ECF No. 17, Notice of Motion; ECF No. 17-1, Memorandum of Law ("Def. Mem."). As set forth below, the defendant fails to show that extraordinary circumstances require a venue transfer to avoid undue prejudice, or that the balance of factors warrants a transfer for the sake of convenience. The defendant's motion to transfer venue therefore should be denied.

## FACTUAL BACKGROUND

The defendant is charged with threatening to assault and murder two United States District Judges sitting in the Eastern District of New York ("EDNY"), in violation of Title 18, United States Code, Section 115. ECF No. 11. The government expects to establish the following facts at trial.[1]

On the morning of Saturday, August 2, 2025, the defendant called the chambers of two EDNY federal judges and let a voicemail for each judge's chambers in which the defendant, among other things, threatened to murder the judges and their families. Court staff subsequently retrieved the voicemails and provided them to the United States Marshals Service ("USMS").

In both messages, the defendant identified himself by his full name before describing himself as a "former litigant" whose cases were "dismissed" by each judge. A review of PACER shows that, between January 25, 2006, and October 24, 2011, the defendant, proceeding *pro se*, filed ten civil lawsuits within the EDNY, which were assigned to the two judges (five cases each) that the defendant is charged with threatening. Each of the defendant's

---

[1]      The facts proffered herein are not a complete statement of all of the government's evidence in this case or that it will seek to introduce at trial.

cases was ultimately dismissed, with the final dismissal occurring on August 14, 2012. A table setting forth the defendant's ten EDNY cases, the date each was filed, and the date each was dismissed, is below:

| Case No. | Caption | Date Filed | Date Dismissed |
|---|---|---|---|
| 06-CV-403 | *Perri v. Bloomberg et al.* | January 25, 2006 | May 27, 2011 |
| 06-CV-2846 | *Perri v. Cardozo et al.* | June 1, 2006 | September 25, 2006 |
| 07-CV-282 | *Perri v. The United States District Court for the Eastern District of New York et al.* | January 11, 2007 | January 31, 2007 |
| 08-CV-451 | *Perri v. City of New York et al.* | January 30, 2008 | November 17, 2009 |
| 10-CV-5038 | *Perri v. Obama et al.* | October 28, 2010 | November 30, 2010 |
| 11-CV-165 | *Perri v. Obama et al.* | January 10, 2011 | February 15, 2011 |
| 11-CV-1359 | *Perri v. Ross et al.* | March 21, 2011 | June 6, 2011 |
| 11-CV-2646 | *Perri v. Bloomberg et al.* | June 3, 2011 | August 14, 2012 |
| 11-CV-3208 | *Perri v. Kelly et al.* | July 5, 2011 | August 2, 2011 |
| 11-CV-5214 | *Perri v. Obama et al.* | October 24, 2011 | December 5, 2011 |

Following the discovery of the threatening voicemails, the USMS took steps both to assure the safety of the two EDNY judges and to locate the defendant. Phone records showed that the defendant was the listed subscriber for the number used to leave the threatening voicemails, and that the calls to each judge's chambers occurred on August 2, 2025. Law enforcement subsequently determined that the defendant was located in the Washington, D.C. metropolitan area, and a USMS team was organized to effectuate the defendant's arrest.

On Friday, August 15, 2025, a Supervisory Deputy US Marshal ("Marshal-1") called and left a message with the defendant, and shortly thereafter received a call back from him. During Marshal-1's lengthy conversation with the defendant that followed, the defendant admitted, in sum and substance, to leaving a bad message for female judges in New York, and worried that there might be a warrant for his arrest. On the call, Marshal-1 eventually convinced

the defendant to meet him that evening near the White House in Washington, D.C., where the defendant was arrested.

## PROCEDURAL HISTORY

The defendant was charged by complaint on August 6, 2025, with threatening to assault and murder a federal judge. ECF No. 1. Following the defendant's arrest, he appeared for removal proceedings in the District of Columbia and was removed in custody to the EDNY, where he was arraigned and ordered detained on August 21, 2025. Minute Entry dated August 21, 2025. The defendant was subsequently indicted on September 15, 2025. ECF No. 11. Alongside the defendant's indictment, the government submitted a letter noting that "reassignment of this case to a U.S. District Judge from within the Second Circuit but outside of the Eastern or Southern Districts of New York may be appropriate." ECF No. 11-2 at 1.

On September 19, 2025, the case was reassigned to the Honorable Stefan R. Underhill, U.S. District Judge for the District of Connecticut. Docket Order dated September 19, 2025. The defendant was arraigned on the indictment on September 22, 2025, and appeared before the Court for a telephonic status conference on October 2, 2025. Minute Entries dated September 22, 2025, and October 2, 2025. On October 24, 2025, the defendant filed the instant motion to transfer venue from the Eastern District of New York to the District of Connecticut. ECF No. 17.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 21(a) ("Rule 21(a)"), a court must transfer a proceeding to a different district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial." Similarly, under Federal Rule of Criminal Procedure 21(b) ("Rule 21(b)"), a court *may* transfer a

proceeding to a different district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."

I.     Rule 21(a)

Transfer of venue under Rule 21(a) for prejudice is reserved for "extraordinary circumstances." *United States v. Awadallah*, 457 F. Supp. 2d 246, 250 (S.D.N.Y. 2006); *see also, e.g.*, *Skilling v. United States*, 561 U.S. 358, 378 (2010) ("The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial."). Indeed, "[t]o satisfy this standard, a defendant must establish that the alleged community bias is 'so pervasive and prejudicial as to have created a reasonable likelihood that a fair trial could not be conducted.'" *United States v. Prado*, No. 10-CR-74 (JFB), 2011 WL 3472509, at *13 (E.D.N.Y. Aug. 5, 2011) (quoting *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010)).

Rule 21(a) focuses on a defendant's constitutional guarantee to "a fair trial by a panel of impartial, indifferent jurors." *See, e.g.*, *United States v. Salim*, 151 F. Supp. 2d 281, 282 (S.D.N.Y. 2001) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Accordingly, "the key to determining the appropriateness of a change of venue is a searching voir dire of the members of the jury pool." *United States v. Yousef*, 327 F.3d 56, 155 (2d Cir. 2003), *overruled on other grounds as stated in United States v. Yousef*, 750 F.3d 254, 261 (2d Cir. 2014). "For this reason, courts often wait until *after* voir dire has begun to decide whether to transfer venue." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2849712, at *8 (S.D.N.Y. June 8, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021); *see also United States v. Ayala*, 64 F. Supp. 3d 446, 452 (E.D.N.Y. 2014) ("[T]he Court concludes that the issue of potential prejudice from negative

media coverage of MS-13 is best determined during or after voir dire examinations.") (internal quotation marks omitted).

II. Rule 21(b)

Under Rule 21(b), a court has "broad direction to transfer venue" for convenience and considers the following factors:

> (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records to be involved; (5) the disruption of a defendant's business unless the case is transferred; (6) the expense to the parties if transfer is denied; (7) location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district involved; and (10) any other special elements that might affect the transfer.

*United States v. Rinsch*, No. 25-CR-85 (JSR), 2025 WL 2972226, at *10 (S.D.N.Y. Oct. 22, 2025) (citing *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)). Although courts have broad discretion to grant a change of venue motion, "[a]s a general rule, a criminal prosecution should be retained in the original district in which it was filed, and defendants bear the burden of justifying a transfer." *United States v. Riley*, 296 F.R.D. 272, 275 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome . . . ." *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (quoting *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964)). Furthermore, in the years since *Platt* was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified. *United States v. Quinn*, 401 F. Supp. 2d 80, 86 (D.D.C. 2005).

<u>DISCUSSION</u>

The defendant argues that venue transfer is appropriate pursuant to Rule 21(a) because the threats "involve members of the judiciary in the [EDNY]" and the "resulting overlap between the Eastern District and the alleged victims raises the specter of unfair prejudice towards Mr. Perri." Def. Mem. at 2, 4. The defendant argues, alternatively, that a transfer pursuant to Rule 21(b) would not "burden the Court" or prove "onerous" to the parties. *Id.* at 5. The defendant's arguments fail to identify compelling circumstances warranting transfer of this case under either Rule 21(a) or (b).

I.     <u>The Court Should Deny the Defendant's Motion to Transfer Venue Under Rule 21(a)</u>

Where, as here, a defendant stands accused of threatening a member of the federal judiciary, the appropriate remedy is not to transfer venue, but rather to designate a visiting judge to preside over the proceedings—something which has already happened in this case.

Instead, for transfer of venue to be warranted, the defendant must demonstrate that "extraordinary local prejudice will prevent a fair trial." *Skilling*, 561 U.S. at 378. He has not, and cannot, do so here. The defendant offers only vague assertions that because "the alleged victims preside in the EDNY," there is an "appearance of injustice" and "specter of unfair prejudice" towards him.[2] Def. Mem. at 4. The defendant further notes that witnesses may include individuals from the judges' chambers and members of the USMS. *Id.* But the defendant fails to explain how this would create "so great a prejudice" against him to warrant a transfer under Rule 21(a).

_____

[2]     While the defendant is only charged with threatening two EDNY judges, in his motion, he notes that his voicemail contained threats referencing every EDNY judge. This fact does not change the analysis or heighten any purported prejudice argument because none of the EDNY judges are overseeing this case.

In support of his argument, the defendant cites *United States v. Turner*, No. 09-CR-542, 2009 WL 2870627, at *1 (N.D. Ill. Sept. 8, 2009), to show that venue transfer would be appropriate here because *Turner* supposedly involved a "similar set of facts." Def. Mem. at 2. But it did not. The unique facts of *Turner* show why it is readily distinguishable and actually undermines the defendant's argument here.

In *Turner*, the defendant was charged with threatening to assault and murder judges from the Seventh Circuit Court of Appeals following a ruling issued by that court. 2009 WL 2870627, at *1. Special circumstances in that case led the district court to conclude that the appearance of justice would be served by a transfer of venue. Specifically, the court noted the following:

> Although the motion makes no reference to the recent tragedy in which the Husband and Mother of a member of the District Court for Northern Illinois were slain, the Court takes notice of it and the widespread media coverage devoted to it. Memories are not so short as to erase the event from the Public Mind.

*Id.* at *3. In that passage, the "recent tragedy" referenced by the court involved the family of United States District Judge Joan Lefkow. Less than a year after white supremacist Matthew Hale was convicted of trying to have Judge Lefkow murdered for holding him in contempt of court, the judge returned home to find her husband and mother dead, each with gunshot wounds to the head. *See Federal judge's family killed*, Chicago Tribune (March 1, 2005), https://www.chicagotribune.com/2005/03/01/federal-judges-family-killed/. And the defendant in *Turner* explicitly referenced the murder of Judge Lefkow's family as a reason why his blog posts should be taken seriously by his targets, explaining that "Judge Lefkow made a ruling in court that I opined made her 'worthy of death.' After I said that, someone went out and murdered her husband and mother inside the Judges Chicago house." *United States v. Turner*, 720 F.3d 411, 416-17 (2d Cir. 2013). Given the recent tragedy involving the judiciary, which received

7

significant public attention, and the fact that the defendant had referenced that tragedy in his threats, the district court determined that a venue transfer would serve the "appearance of Justice." *Turner*, 2009 WL 2870627 at *3.

The importance of these unique circumstances in *Turner* becomes clear when comparing it with *United States v. Nettles*, No. 04-CR-699 (N.D. Ill.), in which the defendant was accused of attempting to blow up the Everett M. Dirksen federal building in Chicago, Illinois, which contains the United States District Court for the Northern District of Illinois, the Seventh Circuit, and the U.S. Attorney's Office. *See* Complaint, *Nettles*, No. 04-CR-699, ECF No. 1 (N.D. Ill. Aug. 5, 2004). While the judges of the Seventh Circuit and Northern District of Illinois were recused, and an out-of-circuit federal judge was designated to preside over the case, the case remained within the Northern District of Illinois. The defendant's motion to transfer venue under Rule 21(a) was denied because he failed to show that he would not receive a fair and impartial trial in the Northern District of Illinois, *see id.* at ECF No. 46, and this decision was affirmed on appeal. *See United States v. Nettles*, 476 F.3d 508, 513-15 (7th Cir. 2007) (decided by a panel of three Sixth Circuit judges sitting by designation).

The unique circumstances in *Turner* do not exist in the instant case. The defendant points to no similar tragedy within the judiciary in the Eastern District of New York within recent years that received public attention, let alone any connection between such a tragedy and the threats at issue in this case.

Unsurprisingly, therefore, in the recent years, when cases have involved threats to the EDNY judiciary, courts have not transferred venue. For example, in *United States v. Celli*, the defendant was charged with threatening two EDNY judges, and he similarly moved to transfer venue because of the "unfairness" against him "derive[d] from the venue as much as

8

from the presiding judge." Def.'s Mots. in Limine, *United States v. Celli,* No. 19-CR-127, ECF

No. 101 (E.D.N.Y. Nov. 23, 2020). The motion was denied by visiting judge Paul A.

Engelmayer from the Southern District of New York, who explained in a bench ruling that the

defendant had failed to meet the Rule 21(a) standard:

> The defense has not alleged that there has been any prejudicial news
> coverage of this case in this District or anywhere in this Circuit.
> Nor, on the Court's review, does there appear to have been any.
> Indeed, the Court is unaware of any news coverage of this matter at
> [all], let alone coverage on a scale or of a nature that could poison
> or tarnish the pool of potential jurors.

*Id.*, Transcript of Pretrial Conference held on December 15, 2020, at 19:18-25.[3]

In *Celli*, the defendant also cited *United States v. Wright*, 603 F. Supp. 2d 506

(E.D.N.Y. 2009), in which the case was transferred out of the EDNY, for the proposition that

venue transfer was appropriate. But Judge Engelmayer found *Wright* to be readily

distinguishable, explaining:

> *Wright* is inapposite. There, the defendant was charged with
> attacking an Assistant United States Attorney during his sentencing
> hearing in a courtroom in the Eastern District. *See id.* at 507. The
> district court in *Wright*, "mindful of the public's perception of the
> judicial process," transferred the case, without objection, to the
> Southern District of New York under Rule 21(b). *Id.* at 508. The
> district court ordered that transfer because the assault was alleged to
> have taken place in a courtroom in the Eastern District, as the Court
> put it, "in a cookie cutter copy of the very courtroom where this trial
> would be held." The district court emphasized the "highly unusual"
> facts generated by a trial of the assault. It included that the
> eyewitnesses to the assault would include the Eastern District
> sentencing judge, the courtroom deputy clerk, the Court reporter,
> and U.S. marshals. Each of these eyewitnesses, the district court
> noted, are "all familiar by name and nod to the personnel who would
> staff any trial of this case in" the Eastern District. 603 F. Supp. 2d
> at 508. A transfer to a courtroom in the Southern District, the district
> court noted, would cure that problem. Those circumstances are not

---

[3]     Because a transcript of the proceedings does not appear to be available on
PACER, the government has enclosed a copy of the transcript to this motion as Exhibit A.

> present here. The threat offense here as alleged did not occur in a courtroom. It took the form, as alleged, of e-mailed communications. There is no reason on the present record to expect trial witnesses to include an Eastern District Judge, or court reporter, or courtroom deputy. Of the types of court personnel identified in *Wright*, at most a marshal or two may be called as a witness. That circumstance not infrequently occurs in a criminal trial. It is not reason to transfer the case. As in other cases in which marshals testify as fact witnesses, this Court is confident that it can supervise the case in a manner that assure that there are no acknowledgments of familiarity or comparable unfairnesses presented by the fact that a testifying marshal works in the District or courthouse.

*Celli*, Transcript of Pretrial Conference held on December 15, 2020, at 20:7-21:16. As Judge Engelmayer noted, the transfer in *Wright* was unopposed and made under Rule 21(b), and not because of any alleged prejudice. With respect to prejudice under Rule 21(a), the court in *Wright* had "reject[ed] as totally unfounded even the mere thought that the men and women responsible for the administration of justice in our courthouse would handle Wright's case differently than they would any of the other hundreds of cases which pass through the Court's doors—that is, with courtesy, efficiency, fairness and a commitment to protect the rights of all." *Wright,* 603 F. Supp. 2d at 508.

The defendant falls far short of demonstrating that so great a prejudice exists in EDNY that it will prevent a fair trial or that any supposed prejudice could not be addressed through voir dire. He provides no valid reason for the extraordinary measure of trying the case outside of the district and jury pool of the location in which the crime occurred. As such, his motion under Rule 21(a) should be denied.

II.  The Court Should Deny the Defendant's Motion to Transfer Venue Under Rule 21(b)

The defendant bears the "substantial burden" of justifying a transfer of venue under Rule 21(b), and he fails to do so in this case. *See, e.g.*, *Rinsch*, 2025 WL 2972226, at *10 ("Not often can defendants meet [Rule 21(b)'s] substantial burden.") (internal quotation marks

and citation omitted).  Here, the *Platt* factors clearly weigh against transferring venue.  The

defendant is currently in custody[4] within the EDNY, and similarly nearly all the possible

witnesses which the government anticipates calling at trial are located in the EDNY.

Furthermore, the defendant has not identified any witnesses who would be wholly unable to

testify in this district.  *See Rinsch,* 2025 WL 2972226, at *10 ("the mere inconvenience to

witnesses is not dispositive; witnesses must fully be unable to testify in this District").  The

location of events relating to the charged counts and the location of documents and records both

favor remaining in the EDNY.  The threatening voicemails were left with judicial chambers in

the EDNY, and records related to the case have all been brought to this district, although the

"conveniences of modern transportation and communication" make the location of documents a

minor concern.  *United States v. Kolfage*, No. 20-CR-412 (AT), 2020 WL 7342796, at *4

(S.D.N.Y. Dec. 14, 2020).

   The government is not aware of the defendant being employed, and therefore

there is no potential disruption to his business.  The government is also not aware of any issue

relating to the EDNY's docket handling this case, especially given the presence of a visiting

judge.  Finally, although the defendant argues that the U.S. Attorney's Office and the Federal

Public Defender for the District of Connecticut are "well positioned to assume responsibility for

this matter," Def. Mem. at 5, he ignores the fact that a transfer would be costly.  As an initial

matter, a transfer would involve relocating several Assistant United States Attorneys, paralegals,

---

[4]  The defendant argues that conditions at the Metropolitan Detention Center in
Brooklyn, New York, justify a change of venue to allow the defendant to "transfer to a safer
facility."  Def. Mem. at 6.  The defendant does not provide any authority to suggest that the
specific facility in which a defendant is held is a basis for a venue transfer motion, nor is the
government aware of any such authority, especially in light of the Bureau of Prisons's authority
to determine how best to house defendants awaiting trial.  *See* 18 U.S.C. § 3142(i)(2) (a pre-trial
detention order directs that a person be "committed to the custody of the Attorney General").

and law enforcement officers to another district for trial, and would require most (if not all) of the government's trial witnesses to travel as well. Those costs are significant and weigh strongly against transfer. *See United States v. Canale*, No. 14-CR-713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"). Furthermore, a transfer would have the added expense of requiring the appointment of another set of counsel to represent the defendant, who would need to coordinate with current counsel and spend a significant amount of time becoming acquainted with the case. As one court has recognized, a transfer under these circumstances would "unfairly burden the Government, who would need to shoulder the lion's share of costs in appointing new counsel for [the defendant] and relocating U.S. Attorneys, law enforcement officers, and paralegals." *Rinsch*, 2025 WL 2972226, at *11.

     As a final note, the Court has set a trial date in January 2026, consistent with the Speedy Trial Act and the defendant's right to have this matter tried promptly. Any transfer of venue at this stage would disrupt the trial schedule and needlessly delay the proceedings in this case. Accordingly, and for the other reasons set forth above, the defendant's motion under Rule 21(b) should be denied.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motions to transfer venue.

Dated:    Brooklyn, New York
          November 3, 2025

                           Respectfully submitted,

                           JOSEPH NOCELLA, JR.
                           UNITED STATES ATTORNEY
                           Eastern District of New York
                           Attorney for Plaintiff
                           271 Cadman Plaza East
                           Brooklyn, New York 11201

           By:    /s/_____
                           Stephen H. Petraeus
                           Matthew F. Sullivan
                           Assistant United States Attorneys
                           (718) 254-7000