# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,     :   19-CR-127(PAE)
                              :
                              :
                              :
      -against-               :   United States Courthouse
                              :   Brooklyn, New York
                              :
                              :
                              :
LUCIO CELLI,                  :   Tuesday, December 15, 2020
         Defendant.           :   2:00 p.m.
                              :
                              :
- - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE PAUL A. ENGLEMAYER
VISITING JUDGES SITTING BY DESIGNATION
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:     SETH D. DUCHARME, ESQ.
(Appearing by          United States Attorney
Video.)                Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                       BY: ANNA KARAMIGIOS, ESQ.
                           KAYLA C. BENSING, ESQ.
                           Assistant United States Attorneys


For the Defendant:      LAW OFFICE OF BENJAMIN SILVERMAN
(Appearing by          Attorney for the Defendant -
Video.)                Lucio Celli
                            224 West 30th Street
                            Suite 302
                            New York, New York 10001
                       BY: BENJAMIN SILVERMAN, ESQ.


For the Defendant:      DOREA H. SILVERMAN, ESQ.
(Appearing by          Attorney for the Defendant -
Video.)                Lucio Celli
                            80 Broad Street
                            Suite 1900
                            New York, New York 10004

Court Reporter:    Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                   Official Court Reporter
                   Telephone: (718) 613-2487
                   Facsimile: (718) 613-2694
                   E-mail:  Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

1          (All parties appear by video conference.)

2          (Defendant present by video.)

3          THE COURT:  This is the case of United States

4    v. Celli, 19-CR-127.

5          Let me begin my taking the roll.  Who do I have for

6    the Government.

7          MS. KARAMIGIOS:  Anna Karamigios for the Government.

8    Good afternoon.

9          THE COURT:  And you are joined by?

10         MS. KARAMIGIOS:  I'm joined by Kayla Bensing by

11   telephone.

12         Thank you, your Honor.

13         THE COURT:  Very good.  Good afternoon to both of

14   you.

15         Who I have for the defense?

16         MR. SILVERMAN:  Good afternoon, your Honor.

17   Benjamin Silverman and with me is, no relation, Dorea

18   Silverman.  I should also note that I found out today that

19   Ms. Silverman has been appointed to this district's Criminal

20   Justice Act panel so we will all be seeing a lot more of

21   Ms. Silverman in the years to come.

22         THE COURT:  Very good.  All right.  Good afternoon

23   Mr. Silverman.  Good afternoon, Ms. Silverman.

24         And congratulations, Ms. Silverman.

25         MS. SILVERMAN:  Thank you.

1       THE COURT:  Mr. Celli, are you on the line?  I see

2   you just want to make sure.

3       THE DEFENDANT:  Yes, I am, your Honor.

4       THE COURT:  Good afternoon.

5       THE DEFENDANT:  Good afternoon.

6       THE COURT:  Can I make sure I got the pronunciation

7   of your name right.  Is it Chel-ly or is it Sel-ly?

8       THE DEFENDANT:  It's Chel-ly but I don't care.

9       THE COURT:  As one who has a name that is often

10  mispronounced, I do care.  I do take pride in trying to get

11  that right so I wanted to ask.

12      Let me confirm that our court reporter is here on

13  the line as well.

14      THE COURT REPORTER:  I'm here, Judge.  Anthony

15  Frisolone from the Eastern District.

16      THE COURT:  This is our second conference in the

17  case, or at least the second conference since I was assigned

18  the case.

19      I have a handful of items to take up with you today

20  and the first is just to recognize that we are doing this

21  conference remotely.  I want to make sure that all concerned

22  consent to our having this status conference remotely of the

23  government.

24      MS. KARAMIGIOS:  Yes, Your Honor, the Government

25  consents to proceeding remotely.

1          THE COURT:  Insofar as this is not an arraignment or

2     a plea or a sentencing.  I don't belive any of the formalities

3     with respect to the CARES Act are necessary.  It's enough to

4     secure everybody's consent in the way that I'm doing.

5          Agreed?

6          MS. KARAMIGIOS:  That's the Government's

7     understanding as well, your Honor.

8          THE COURT:  Mr. Silverman, does the defense consent

9     to this conference being videographic, if you will, as opposed

10    to in person.

11         MR. SILVERMAN:  Yes, Your Honor.  I see that

12    Mr. Celli is also nodding.  I discussed this with him and we

13    both consent.

14         THE COURT:  I take it as well that you agree there

15    is no obligation under the CARES Act to do a fuller allocution

16    given the nature of the conference.

17         MR. SILVERMAN:  I think that's right, your Honor,

18    although Mr. Celli has executed a CARES Act waiver, and as

19    soon as it arrives in the mail I will provide it at Court on

20    ECF out of an abundance of caution.

21         THE COURT:  I appreciate you doing that.

22         Mr. Celli, just to be careful about this.  I take it

23    you, too, are consent to have this proceeding occur by video

24    as opposed to in person?

25         THE DEFENDANT:  Yes.  Definitely, your Honor.

1          THE COURT:  I think it makes wise sense.

2          Okay.  The second issue I need to take up is also

3     more of a matter of housekeeping.

4          As counsel are aware on October 22nd, about a week

5     after the last conference in the case, the President signed a

6     bill called the Due Process Protections Act.  And what it did

7     was to create a new Federal Rule of Criminal Procedure 5(f).

8     And the rule requires that at the initial scheduled conference

9     in a criminal case, the judge issue a written order and then

10    put on the record an oral order reminding the Government of

11    its obligations under *Brady v. Maryland* and the cases that had

12    followed it.

13         Later today, a written order of the sort that I'm

14    putting on the record in all of my cases will hit the docket

15    in this case.  And I should say that although the new rule by

16    its terms appears to apply only at initial conference in the

17    case, I, like most other judges in the Circuit, are treating

18    the new Rule 5(f) as applicable to existing cases like this

19    one as well.

20         So, in existing cases, I'm putting the Rule 5(f)

21    written order on the docket.  And, Ms. Karamigios, I'm about

22    to read aloud my oral order which is brief.  At the end of it,

23    be forewarned I'm going to ask you if the Government confirms

24    that it understands its Brady obligations so here it goes.

25         I direct the prosecution to comply with its

1  obligation under *Brady v. Maryland* and its progeny to disclose

2  to the defense all information, whether admissible or not,

3  that is favorable to the defendant material either to guilt or

4  to punishment and known at prosecution.

5  Possible consequences for noncompliance may include

6  dismissal of individual charges or the entire case, exclusion

7  of evidence, and professional discipline or court sanctions on

8  the attorneys responsible.

9  I will be entering a written order more fully

10  describing this obligation and the possible consequences of

11  failing to meet it, and I direct the prosecution to review and

12  comply with that order.

13  Does the prosecution confirm that it understands its

14  obligations and will fulfill them?

15  MS. KARAMIGIOS:  Yes, Your Honor.  The Government

16  confirm that it understands its Brady obligations and will

17  fulfill them.  And I also will read the written order when it

18  hits the docket later today.

19  THE COURT:  Very good.  Thank you.

20  Moving more at content of this case.  I want to take

21  up the status of discovery.  At the October 16th conference, I

22  elicited from the Government a thorough account of the

23  discovery at issue in the case.  And because Mr. Silverman was

24  taking over as successor counsel, the Government promised in

25  short order to make sure that that discovery was all furnished

1  to Mr. Silverman.

2         Ms. Karamigios, was all discovery all Rule 16

3  discovery, in fact, furnished properly after the conference to

4  Mr. Silverman?

5         MS. KARAMIGIOS:  Yes, your Honor, with one caveat.

6  It's my understanding that everything that had previously been

7  produced has gone over.  One item that went over was the full

8  return from Apple from the search warrants that were executed

9  on the defendant's e-mail accounts.  We had sent that over at

10 defense in a .log file format which is the standard practice.

11 But, unfortunately, the defense isn't able to open that in

12 that format.  So we have been working to convert it to a

13 format that the defense can open and read with the software he

14 has on his computer.  We're hopeful that we'll be able to mail

15 that this week, and if not, this week then very shortly.

16        THE COURT:  Okay.  Let me just pause on that for a

17 moment.

18        At the last conference, I think the Government, even

19 as of October 16th, had not, I think, completed production to

20 predecessor counsel of the all of Apple search warrant

21 returns.  And, as I recall, it had -- there was some

22 technological explanation for that.  I take it that hurdle has

23 been crossed that, in other words you're able to access

24 yourself all of the Apple returns.  The problem is that you've

25 been unable to get it to Mr. Silverman in a manner in which he

1  can open.

2      MS. KARAMIGIOS:  Yes, Your Honor, that's my

3  understanding of the state of the Apple returns.

4      THE COURT:  What had been the earlier issue, remind

5  me, as to Apple?  There was some reason I thought you couldn't

6  access all of it.

7      MS. KARAMIGIOS:  Your Honor, I'm not familiar with

8  that aspect of the case.  I know that it has been resolved and

9  that we've been able to look at the Apple returns, and that

10 really over the last few weeks it's just been a matter of

11 converting them into a format that defense counsel can view

12 them in.

13     THE COURT:  Otherwise, everything has been provided

14 to Mr. Silverman?

15     MS. KARAMIGIOS:  Yes, Your Honor.

16     THE COURT:  Okay.  At the last conference as well, I

17 asked the Government, really, as an act of professional

18 courtesy, to please identify within several bulky areas of

19 discovery the particular items that it presently intends to

20 use, or thinks it may use, without limiting your options later

21 on down the road.  I wanted to make sure, though, that the

22 defense has some sort of a search light in going through some

23 of the more voluminous areas.  In particular, we covered in

24 the previous conference jail calls of which I think the

25 Government indicated, though, about 170.  And as well, I think

1    the other item of this nature involved e-mails from Mr. Celli

2    which I think were on three different platforms.

3            Have you been able to, or have you identified for

4    the defense, the area, the e-mails or the jail calls as the

5    case may be, that the Government regards as potentially

6    germane here?

7            MS. KARAMIGIOS:  Yes, Your Honor.

8            So with respect at jail calls.  The jail calls

9    identified in our motions are presently the only jail calls

10   that we would anticipate we would want to use at trial.  So

11   that's where things stand on the jail calls.

12           With respect to e-mails, we have as part of

13   discovery identified the e-mail universe that we think

14   qualifies as sort of the sort of hot docs is my understanding.

15   And I think we all understand, also based on our motions, the

16   type of e-mail that we might consider admitting.

17           I can't, unfortunately, represent that we've been

18   through the thousands of e-mails that were produced and

19   identified, each and every one that we might seek to admit at

20   trial, but I don't believe there's any agreement between us

21   and defense counsel about him being on appropriate notice of

22   what we might seek to introduce.

23           THE COURT:  Let me make sure that my directive that

24   this be a continuing obligation is understood.  In other

25   words, the goal here is not to limit you at trial.  I

1   understand that trial preparation is the dynamic thing.  But I
2   also want to make sure that Mr. Silverman isn't playing
3   "Where's Waldo."  And to the extent you have a sense of what
4   the potentially germane subset of these otherwise rather
5   lengthy compendiums of documents are, you've given him a heads
6   up.
7           MS. KARAMIGIOS:  Understood, your Honor.  We will
8   continue to endeavor to do that.
9           THE COURT:  Has any new discovery come in or come to
10  light since our last conference?
11          MS. KARAMIGIOS:  No, Your Honor, I don't believe so.
12          THE COURT:  Any other updates as to discovery?
13          MS. KARAMIGIOS:  I don't believe so.  I think
14  defense might have one issue that he'd like to raise.
15          THE COURT:  I will get to him.
16          MS. KARAMIGIOS:  Not from the Government.
17          THE COURT:  So, Mr. Silverman, I was about to ask
18  you if you had any issues with respect to discovery including
19  whether what Ms. Karamigios has represented to me tracks with
20  your understanding.
21          I can't hear you.
22          MR. SILVERMAN:  I apologize.
23          It does, your Honor.  I would just clarify that the
24  issue that was raised at the October 16th conference about the
25  Apple discovery that's essentially where we are today.

1  There's, I understand, that by the end of this week I will

2  receive a format that the general public will be able to view

3  this on, and I understand understandably it's been slow,

4  paralegals are not in the office as much so often.

5       I don't have any other matters to bring to the court

6  right now.  The parties conferred shortly before this

7  conference and I believe we resolved all outstanding discovery

8  requests at this time.

9       THE COURT:  Okay.  Very good.  Good to hear.  So no

10  issue from your perspective, in fact.

11       MR. SILVERMAN:  No, Your Honor, thank you.

12       THE COURT:  Mr. Silverman, you'll recall that at the

13  last conference, I put on the record my expectation in the

14  context of cases that are brought originally before me which

15  is, that at the second conference, if the defense has any

16  intention of making a suppression motion they are to notify

17  the Court.  I realize I've gotten a number of motions of

18  different characters, most of which are really in the nature

19  of motions in limine.

20       But just to be clear, this case does not appear to

21  be suppression-type, a case that involves suppression-type

22  scenarios.  Just to be clear, the defense does not intend to

23  move for suppression of any evidence; is that correct?

24       MR. SILVERMAN:  That is correct, your Honor.

25       THE COURT:  Okay.  All right.

1    Mr. Silverman, I also wanted to just compliment you

2   for getting out of the gate quickly.  I'll have a few words to

3   say about the motions in a moment, but it's obvious to me that

4   in the rather short period of time that you have been

5   Mr. Celli's counsel, you have approached the job with

6   dedication and vigor and I appreciate you doing that.

7    MR. SILVERMAN:  We appreciate that.  Thank you, your

8   Honor.

9    THE COURT:  With that, let me just ask because there

10  is a history here with respect to prior counsel relationships

11  to the extent that you are comfortable saying anything, how is

12  it going?

13    MR. SILVERMAN:  I think things are fine.  Mr. Celli

14  may want to speak on that.  It may be different after we get

15  your Honor's rulings I don't know.  But I think that the past

16  few months have been well, your Honor.  We appreciate the

17  inquiry.

18    THE COURT:  Very good.  Mr. Celli, no need to

19  comment on that but since Mr. Silverman passed the baton to

20  you, is the attorney-client relationship satisfactory?

21    THE DEFENDANT:  I would say it's better than prior.

22  I still have little issues but it's better than before.

23    THE COURT:  Good.  I'm very glad to hear that.

24    Okay.  With respect at motions, the only one that

25  I'm prepared to resolve today is what I will call the

1  defense's venue motion.  I will have a short bench ruling

2  about that.  The other motions are ones, frankly, I have not

3  had the time to run to full ground yet.  And I made a judgment

4  as well that all of those being in the nature of motions in

5  limine shaping the evidence that would or wouldn't be

6  presented at trial could afford to wait.

7        I do, before the end of this call intend to set a

8  trial date, and I've been in touch with the chief judge of the

9  district court in the Eastern District to get dates of trial

10  availability and I have a handful that are possibilities and I

11  want to take them up with you.  And having set a trial date,

12  I'm then, working backwards, coming up with a pretrial

13  conference at which I will be able to resolve what I'll call

14  the motions in limine the remaining motions.

15        But before turning to that, I wanted to compliment

16  all of you even now.  Notwithstanding that I have not gotten

17  at point of resolution with respect to the motions in limine,

18  it's clear to me there's been thoughtful, concerted efforts by

19  both I sides on those motions.

20        Let me just ask before turning at venue motion.

21        Mr. Silverman, I'm mindful that from an application

22  you made with respect to defense expenditures, at least there

23  was the scenario at some point of considering an application

24  for deferral of prosecution.  I don't want to go beyond that,

25  but in reflecting on the use of my time in terms of resolving

1   pretrial motions, is that still a live possibility?

2          MR. SILVERMAN:  It's a live possibility from the

3   defense's perspective, your Honor.  And it's a possibility we

4   would like time to engage in.  So, yes.

5          THE COURT:  Okay.  All the more reason then I think

6   that in terms of just my allocation of my resources it makes

7   more sense for me to wait for that process do run its course

8   before convening a conference to either resolve the pending

9   motions or to pursue questions about them at extent that there

10  are ambiguities and factual questions.

11         That said, Mr. Silverman, if you were representing

12  to me that there was a particular motion in there that was

13  outcome determinative, or likely to be, with respect to the

14  defense's posture vis-à-vis some form of pretrial disposition,

15  I would be sensitive to that and very much consider front

16  loading a decision as that.  Again, I'm trying to be user

17  friendly here, and if there was something that made a

18  particular difference that you were prepared to so represent,

19  I would be open to shifting around my setting my priorities to

20  assist you in that way.

21         MR. SILVERMAN:  I appreciate that, your Honor.  I

22  don't think there's a particular motion that would be as

23  nearly as dispositive as that but we appreciate that.

24         THE COURT:  All right.  We'll keep the line of

25  communication open as you're speaking to Mr. Celli.  If you

1  perceive that there is a motion among these that is of a

2  particular gaining issue with respect to any discussions the

3  parties maybe having, I'm happy to notified of it.  I try to

4  use my time sensitively to assist counsel in forming secure

5  litigation judgments.

6      MR. SILVERMAN:  Understood.

7      THE COURT:  May I ask you, Mr. Silverman, if you

8  have any insight at this point as to approximately when you

9  made any application vis-à-vis a deferred prosecution may be

10  made and resolved.

11      Do you have any broad timeframe for that?

12      MR. SILVERMAN:  I would anticipate we would have to

13  do something in the next three to four or four to five weeks.

14  The resolution would be the Government's schedule.

15      And I should also note, your Honor, since we're on

16  the topic of what might affect scheduling that if that is

17  where this is going, I'm not sure, that Mr. Celli has

18  discussed with me, and I'm gathering based on your

19  conversations with the chief judge of the Eastern District,

20  how about the venue motion might be resolved, not to

21  predetermine but just to guess, Mr. Celli has discussed with

22  counsel and preliminarily instructs counsel that he would like

23  to pursue a challenge to any ruling on the venue that's not in

24  his favor and mandamus.

25      I can say that having researched this, we have

1   determined that that is not procedurally frivolous.  And so,

2   there is a body of case law clearly about that in terms of

3   venue items.

4            And so, after this Ms. Silverman and I will speak to

5   Mr. Celli but that is something that may be filed with the

6   Second Circuit.

7            THE COURT:  Thank you.  Look, I appreciate the heads

8   up.  Let me give the venue motion ruling and let's then take

9   up, in the course of setting a trial date, next steps.

10            MR. SILVERMAN:  Okay.

11            THE COURT:  With that, I have a short bench ruling.

12   It should take about it five or six pages to read.  Here it

13   goes.

14            Mr. Smallman, were you able to send an advance copy

15   to the court reporter to assist in following along?

16            MR. SMALLMAN:  Yes, Judge.  And I did confirm that

17   it was received before we started the conference.

18            THE COURT:  Very good.  Here it goes.

19            I am going to resolve in a bench ruling one set of

20   Mr. Celli's pretrial motions.  That is the motion to transfer

21   this case to a district judge outside of the Second Circuit.

22   I have carefully reviewed both the Government's and defense's

23   submissions on that motion.  I view this motion as having two

24   components.  The first is the transfer of this case to a venue

25   outside of the Eastern District and indeed outside of the

1  Second Circuit.  The second is to recuse myself, as well as

2  all other district judges in the Second Circuit.  I will

3  address each in turn.  There will not be a separate written

4  decision.  Following this conference, I will issue a bottom

5  line order reflecting the resolution of this motion.  So, if

6  the content of this ruling is of consequence to you, you will

7  need to order a transcript of this conference.

8          In seeking a new venue, Mr. Celli invokes Federal

9  Rule of Criminal Procedure 21(a).  It provides that:

10          "[u]pon"Upon the defendant's motion, the Court

11  must transfer the proceeding against that defendant to

12  another district if the Court is satisfied that so great a

13  prejudice against the defendant exists in the transferring

14  district that the defendant cannot obtain a fair and

15  impartial trial there."

16          Rule 21(a) protects a defendant's right to "a

17  fair trial by a panel of impartial, indifferent jurors."

18  *United States v. Salim*, 151 F. Supp. 2d 281, 282 (S.D.N.Y.

19  2001).  Here, the defense argues that a venue transfer from

20  the Eastern District, where this Court is sitting by

21  designation, is necessary because the "Judges of the

22  Second Circuit were just as victimized by the [defendant's]

23  alleged conduct" as were the Judges of the Eastern District

24  of New York.  Dkt. 105 ("Def. MILs") at 4.

25          A transfer of venue is warranted under Rule

1   21(a) only if a court is satisfied that there exists in the

2   district where the prosecution is pending so great a

3   prejudice against the defendant that the defendant cannot

4   obtain a fair and impartial trial at any place fixed by law

5   for holding court in that district." *Salim*, 151 F. Supp. 2d

6   at 282.   The Second Circuit has held that, "to prevail on a

7   motion under Rule 21(a), the defendant must show 'a

8   reasonable likelihood that prejudicial news prior to trial

9   will prevent a fair trial.'"   *United States v.*

10  *Maldonado-Rivera*, 922 F.2d 934, 96667 (2d Cir. 1990) (quoting

11  *Sheppard v. Maxwell,* 384 U.S. 333, 363 (1966)).   "To satisfy

12  this standard, a defendant must establish that the alleged

13  community bias is 'so pervasive and prejudicial as to have

14  created a reasonable likelihood that a fair trial could not

15  be conducted.'"   *United States v. Prado*, No. 10-CR-74 (JFB),

16  2011 WL 3472509, at *13 (E.D.N.Y. Aug. 5, 2011) (quoting

17  *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010)).

18          That standard is not met here.   The defense

19  has not alleged that there has been any prejudicial news

20  coverage of this case in this District or anywhere in this

21  Circuit.   Nor, on the Court's review, does there appear to

22  have been any.   Indeed, the Court is unaware of any news

23  coverage of this matter at a lotall, let alone coverage on a

24  scale or of a nature that could poison or tarnish the pool of

25  potential jurors.

1          Instead, the defense argues that trying the

2   case in this current venue would give rise to "unfairness"

3   against him because the Eastern District Courthouse is "the

4   victim's home court."  Dkt 105. ("Def. Reply") at 6; *see also*

5   Def. MILs at 7.  In support of this argument, the defense

6   cites *United States v. Wright*, 603 F. Supp. 2d 506, 509

7   (E.D.N.Y. 2009).  But *Wright* is inapposite.  There, the

8   defendant was charged with attacking an Assistant

9   United States Attorney during his sentencing hearing in a

10  courtroom in the Eastern District.  *See id*. At 507.  The

11  district court in *Wright*, "mindful of the public's perception

12  of the judicial process," transferred the case, without

13  objection, to the Southern District of New York under Rule

14  21(b).  *Id*. At 508.  The district court ordered that transfer

15  because the assault was alleged to have taken place in a

16  courtroom in the Eastern District, as the Court put it, "in a

17  cookie cutter copy of the very courtroom where this trial

18  would be held."  The district court emphasized the "highly

19  unusual" facts generated by a trial of the assault.  It

20  included that the eyewitnesses to the assault would include

21  the Eastern District sentencing judge, the courtroom deputy

22  clerk, the Court reporter, and U.S. marshals.  Each of these

23  eyewitnesses, the district court noted, are "all familiar by

24  name and nod to the personnel who would staff any trial of

25  this case in" the Eastern District.  603 F. Supp. 2d at 508.

1  A transfer to a courtroom in the Southern District, the

2  district court noted, would cure that problem.  Those

3  circumstances are not present here.  The threat offense here

4  as alleged did not occur in a courtroom.  It took the form,

5  as alleged, of e-mailed communications.  There is no reason

6  on the present record to expect trial witnesses to include an

7  Eastern District Judge, or court reporter, or courtroom

8  deputy.  Of the types of court personnel identified in

9  *Wright*, at most a marshal or two may be called as a witness.

10  That circumstance not infrequently occurs in a criminal

11  trial.  It is not reason to transfer the case.  As in other

12  cases in which marshals testify as fact witnesses, this Court

13  is confident that it can supervise the case in a manner that

14  assure that there are no acknowledgments of familiarity or

15  comparable unfairnesses presented by the fact that a

16  testifying marshal works in the District or courthouse.

17          Relatedly in pursuing a change of venue, the

18  defense notes the fact that this Court, meaning I Judge

19  Engelmayer, was designated to serve as an Eastern District

20  judge for the limited purpose of this case.  HeThe defense

21  argues that "the reasons that compelled Chief Judge Mauskopf

22  to request a judge from outside of the Eastern District also

23  require that the case be transferred to a judge outside of

24  the Second Circuit."  Def. MILs at 4.  But Chief Judge

25  Mauskopf's order on October 6, 2020 appointing this judge was

1   not based on any unfairness inherent in this venue.  Rather,

2   Judge Mauskopf recused the district judges of the Eastern

3   District of New York from this under 28 U.S.C. §455(a)

4   because "the victims of the alleged crime"the Honorable Margo

5   K. Brodie and the Honorable Brian M. Cogan"are judges of [the

6   Eastern District]."   Dkt. 79.   The district judges in this

7   District were thus day to day colleagues of the victims in

8   the case, giving rise to a potential appearance of

9   partiality.  Accordingly, Chief Judge Mauskopf then

10  designated me, a United States District Judge who is assigned

11  to a different district, the Southern District of New York,

12  to perform the duties of a district judge for this specific

13  case.  Dkt. 80.

14          As Chief Judge Mauskopf's designation of a

15  judge from outside the District recognized, the concerns

16  about an appearance of partiality that motivated the recusal

17  of the judges of the Eastern District are not triggered by

18  the service in this case of a judge from another district.

19  Although I hold the same job title, United States District

20  judge, I am not a day to day colleague of the alleged victims

21  here.  And so the same appearance concerns are not presented

22  by my service.  In any event, any such appearance would not

23  present an issue under Rule 21(a) involving the propriety of

24  the venue in which the case was to be tried.

25          To the extent the defense moves for a transfer

1  of venue, the Court accordingly denies the defense motion to

2  transfer this case.  The defense has failed to show that Mr.

3  Celli cannot receive a fair and impartial jury in the Eastern

4  District of New York, let alone in any district within the

5  Second Circuit.

6              I said earlier that I viewed the motion as

7  having two parts.  The second part seeks this court's

8  recusal.  It arises under 28 U.S.C. § 455(a).  That statute

9  provides that any judge "of the United States shall

10  disqualify himself in any proceeding in which his

11  impartiality might reasonably be questioned."  As the

12  Second Circuit has explained: "Section 455(a) requires a

13  showing that would cause an objective, disinterested observer

14  fully informed of the underlying facts [to] entertain

15  significant doubt that justice would be done absent

16  recusal."  *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)

17  (internal quotations omitted).

18              The Circuit has held that, to determine

19  whether recusal under § 455(a) is appropriate, a court:

20              Must ask the following question: Would a

21  reasonable person, knowing all the facts, conclude that the

22  trial judge's impartiality could reasonably be questioned?

23  Or phrased differently, would an objective, disinterested

24  observer fully informed of the underlying facts, entertain

25  significant doubt that justice would be done absent recusal?

1     *United States v. Bayless*, 201 F.3d 116, 126

2   (2d Cir. 2000).  Recusal motions, the Circuit has held, "are

3   committed to the sound discretion of the district court."

4   *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

5   And, it has held, disqualification is not required in cases

6   that "involve[] remote, contingent, indirect or speculative

7   interests."  *Lovaglia*, 954 F.2d at 815.

8              Here, the defense argues that all district

9   judges in the Second Circuit must be recused, because at

10  least one active Second Circuit judge, Judge Katzmann, is an

11  alleged victim of the threat offense alleged here.  The

12  defense argues that "[a]llowing this case to proceed in a

13  court within this Circuit, and subject to review by the

14  Second Circuit, poses continuing concerns about the

15  appearance of unfairness" to the defendant.  Def MILs at 45.

16             The issue at hand solely involves supervision

17  of the trial.  A separate recusal issue would be presented in

18  the event of an appeal to the Second Circuit, but that

19  question is neither ripe nor committed to this Court's

20  review.

21             As to the need to recuse district judges from

22  within the Circuit from presiding over this case, the defense

23  argues that a district judge within the Circuit may not wish

24  anger judges of the same Court of Appeals, because such

25  appellate judges routinely review his or her decisions.

1  Thus, the defense argues, a district judge might skew his or

2  her trial rulings to favor the victim appellate judge in the

3  case, or at least appear to be partial in such a manner.

4  Def. MILs at 5. The defense argues, for example, that the

5  public could imagine that a district judge might shy away

6  from entering a judgment of acquittal or from imposing an

7  otherwise deserved low sentence lest doing so offender the

8  Second Circuit.

9             The Court rejects that argument, to wit, that

10  a judge from within this Circuit must be recused from this

11  case because the public would otherwise conclude that such a

12  judge was administering the case unfairly, in a manner

13  designed to placate one or more Circuit judges. The Court

14  find these concerns, quoting Circuit law, to be too "remote,

15  contingent, indirect [and] speculative" to require recusal

16  here. *See Lovaglia*, 954 F.2d at 815.

17             The Court recognizes that a separate recusal

18  issue would arise on appeal. The defense argues that if

19  venue is not changed, any appeal would have to be made to the

20  Second Circuit, which, the defense argues, either could not

21  be impartial or might not appear to be impartial. But the

22  Circuit has its own means of guarding against concerns. As

23  the Government noted, a litigant before the Circuit may move

24  for recusal of any or all members of the appellate panel

25  assigned if and when any part of this case is on appeal. It

1    is therefore not necessary for this Court to recuse itself

2    and all judges within this Circuit to enable the defendant to

3    have a conflict-free appeal, if cause for an appeal indeed

4    ever arises here.  This Court does not express any views as

5    to the appropriate resolution by the Circuit of any recusal

6    motion that may be directed to it later in the course of this

7    case.

8                 The Court therefore also denies the defense's

9    recusal motion.

10               Now, with that Mr. Silverman, I want to set a

11   rational schedule for this case recognizing the possibility

12   that you may seek expedited review within the Circuit of the

13   adverse ruling you've just received.

14               The dates that I have received from the

15   Eastern District for potential trials all are in May and

16   June.  And all, hopefully, will place the trial at a date

17   when it once again is reasonable to gather again for trial

18   purposes and that is the operative premise in my setting a

19   trial date.  Of course, if I set a trial date and the public

20   health crisis has not abated so as to make a trial workable,

21   we will then reconvene about the schedule in the case, and

22   presumably, adjust the trial date.  So the operative

23   assumption here is that COVID does not prevent a jury trial

24   from occurring in the Eastern District in May or June.

25               With respect to that, that would seem to give

1  you, Mr. Silverman, plenty of time given the expedited nature

2  of mandamus proceedings for you to so move if you want to.

3      MR. SILVERMAN:  I think that's right, your Honor.

4  Just two things.

5      One, I need to say on behalf of Mr. Celli his view

6  that's important to express here which is that significant

7  amount of time is necessary to further investigate the case

8  and prepare for trial.  And it's Mr. Celli's view that a trial

9  at least a year off would be appropriate.

10      In terms of counsel's availability, I have a trial

11  at the end of June scheduled.  A large, complex fraud trial

12  before Judge Cote; and so, my availability in June is not as

13  great as in May.  There is the ability to choose between those

14  two dates, but I do want to note Mr. Celli's view on that

15  matter.  Thank you.

16      THE COURT:  Let me just pause on that.

17      The case has, obviously, been pending for some time

18  and by its nature, it is limited while there is background,

19  and the parties have debated about the scope and nature of the

20  background that's properly admitted under the Rules of

21  Evidence, the actual actus reus as we say is confined to a

22  particular day.  I need you to pin down much more concretely

23  what the nature is of the investigation that the defense

24  envisions that would justify an additional year adjournment

25  from today.

1      MR. SILVERMAN:  Thank you, your Honor.

2      So speaking for Mr. Celli, I think it's his view,

3  and it's the subject of the motions in limine, that

4  exploration of this case involves investigation of his

5  underlying civil cases.  And I also understand, and Mr. Celli

6  has asked me to advise the Court, that there is an application

7  for relief that he would like to file stemming from his

8  pretrial detention in the Second Circuit.

9      There is, as your Honor noted with respect at

10  recusal issue, the Circuit has an *Anders* framework.  That

11  framework doesn't exist here.  It is my strong view as

12  Mr. Celli's lawyer that he is best with counsel.  I am very

13  honored and privileged to be his counsel.  I wish to remain

14  his counsel.  Mr. Celli, of course, also understands how to

15  proceed and has done so in civil cases.  There may be an

16  application that Mr. Celli would ask me to provide the Court,

17  I would ask to not be prejudged, but that is forthcoming.  So

18  that would be one matter.

19      And along those same lines, there is the in limine

20  issue of the Government's motion to preclude the defense from

21  discussing the substance of the underlying civil cases against

22  either the Department of Education and the teachers union.  In

23  Mr. Celli view, those needs to be investigated thoroughly.

24      THE COURT:  Thank you, Mr. Silverman.  Let me pursue

25  that with you for just a moment.

1    The pretrial detention issue came up at the last

2    conference and I think I took it up with you predecessor.  The

3    issue there involved whether, let us assume for argument's

4    sake that Mr. Celli had a meritorious claim that he was

5    improperly held pre-trial for the period of time that he was

6    held.  And the issue that I raised is:  That does in any way

7    shape the trial evidence relating to the threat offense under

8    Section 875 that's brought here.  Your predecessor said no,

9    and I responded then by saying that this appeared to be more

10    in the nature of a civil claim which Mr. Celli is at liberty

11    to pursue but it didn't appear to be an issue whose resolution

12    shaped the evidence that would be received at trial.

13    Are you arguing otherwise?

14    MR. SILVERMAN:  Your Honor, two things.

15    One I would say in terms of does it shape the trial

16    evidence?  The answer is no to the first of that question.

17    And as at substance of the motion, I would

18    respectfully request that if or when Mr. Celli provides me

19    something that he would like to be submitted to the Court,

20    that the Court can it address at that time.  I don't want to

21    prejudge it.  I'll provide if you want something that's not

22    finalized.

23    THE COURT:  That's helpful.  What it does say to me

24    is that the, to the extent we're talking about a trial date,

25    which is really the context in which this discussion is

1   occurring.  The prospect of litigating the conditions of

2   Mr. Celli's earlier detention really just doesn't bear on the

3   trial date.  He has many rights with respect to that and

4   there's a motion that's properly made within the framework of

5   this case, I'd be happy to consider it and do so thoroughly

6   and carefully but I don't think it affects the trial date.

7

8           Now comes the separate issue with respect at

9   evidence that may come in about the underlying cases.  And I

10  appreciate that that's an issue that the parties part company

11  on as to the more limited portrait of the underlying cases

12  that the Government would like to put in, or the more

13  capacious portrait of those cases that the defense would like

14  to put in.

15          But when all is said and done, those underlying

16  cases are germane, to the extent they're germane, as context

17  as explaining the actions that are at issue in contextualizing

18  and that may bear on the Government's theory of motive, and it

19  may bear an Mr. Celli's defense as to frame of mind and what

20  he thought he was doing.  And I fully understand the parties'

21  respective views on that and have yet to come to rest as to

22  the right answer.  I will have a question or two for you about

23  that in a few moments.

24          But none of that would seem to turn on the

25  exploration of facts not known presently at parties to those

1  cases, particularly, Mr. Celli.  In other words, even if one

2  were to assume that a searching new review were to conclude

3  previously uncovered facts bearing on the merits of his legal

4  claims there, I don't see how that could possibly be germane

5  to any of the state of mind or background issues that are

6  relevant to an §875 prosecution.

7          MR. SILVERMAN:  I understand what your Honor is

8  saying.  I wanted to note Mr. Celli's objection.  I think it's

9  important that voice be given to it.  I understand that we're

10  over two years from the arrest in this case and we have the in

11  limine motions fully teed up for the Court.  I understand

12  where we are in this process.  I think that, you know,

13  Mr. Celli's view is that if the Court were to rule in his

14  favor on that in limine motion, there would be information

15  that would belong at teachers union that would need to come to

16  light through third-party discovery and subpoenas that have

17  not yet been served and requests that have not been propounded

18  that would become relevant in that case.

19          THE COURT:  Forgive me, Mr. Silverman, but even

20  imagining, let's say, that the adversary in that case turned

21  out to have some smoking gun, some evidence in its files that

22  is has powerfully helpful to Mr. Celli as one could imagine in

23  the civil litigation.  If it was unknown to him at the time of

24  the conduct here, what is the theory of relevance at this

25  trial?

1      MR. SILVERMAN:  I understand what your Honor is

2  saying.  I think the point has been made, and I understand the

3  points -- I understand the Court's point.  I don't think, and

4  I understand where the Court is heading.  I think that the

5  argument as to relevance would be that it -- that it goes to

6  motive and informs what Mr. Celli was getting into, you know,

7  what he was trying to accomplish.  He had to subjectively

8  either intend that a threat be transmitted or understand that

9  it would be received and perceived as a threat by the

10  recipient as to the first of those two possible avenues

11  towards guilt.  The Government wants to establish as motive

12  for sending the threat as the way of telling the story that it

13  thinks helps prove its case and Mr. Celli has an alternate

14  explanation of hits motive.

15      That said, your Honor, we made our objection; we've

16  made our point.  I don't want to belabor it too strongly.

17      THE COURT:  Look, I respect very much what you're

18  saying.  I don't think, though, that neither of the

19  explanations you give is a reason to further extend the case

20  to provide for a trial a year from now.  I'm happy to try to

21  accommodate your schedule including the trial that you have in

22  late June before Judge Cote, whom I know when she sets a trial

23  date it is in cement.

24      I've got two dates that right now are I am told I

25  can lock into for the Eastern District for this trial,

1   April 10th and April 17th.

2           Let me ask you, Mr. Silverman, and then I'll ask

3   government counsel whether there is any problem with either

4   those days.

5           MR. SILVERMAN:  Thank you, your Honor, I am checking

6   my calendar.

7           THE COURT:  I said May, did I not?

8           MR. SILVERMAN:  Your Honor, you said April.

9           THE COURT:  That was the brain not working well.

10  It's May 10th and May 17th.  Sorry about that.

11          MR. SILVERMAN:  So I am available those weeks and

12  would respectfully request the later date.

13          THE COURT:  Okay.  The later of the two?

14          MR. SILVERMAN:  Yes, Your Honor.

15          THE COURT:  Okay.  And, Ms. Karamigios, do you have

16  a view?

17          MS. KARAMIGIOS:  Both of those weeks work for the

18  Government.

19          THE COURT:  Fine.  Let's do that.  Put it down for a

20  trial on May 17th.  I am operating on the assumption that this

21  trial will not take more than a week, but if it does it will

22  take more than a week.  But my assumption based on the

23  conversation we had last time, and the greater incentive of

24  that got you through the case to the motions in limine is

25  that, in all likelihood, the case oughtn't take a five-day

1  week.

2       I'm going to put that down as the trial date in the

3  case.  Let's now talk just about the mandamus that you

4  envision Mr. Silverman.

5       THE DEFENDANT:  May I say something, your Honor?

6       THE COURT:  Mr. Celli, I'll call on you in one

7  moment but I'm very solicitous of the defense function here.

8  And having been a defense lawyer in a prior life, I'm mindful

9  of the alorums that go off when a client speaks on the record

10 without tutelage from counsel.

11      Mr. Silverman, your client wishes to speak, are you

12 okay with my indulging that?  Is there anything you want to

13 instruct before he does.

14      MR. SILVERMAN:  Your Honor, I know that is an odd

15 request.  Normally, I would have a chance to whisper back and

16 forth with my client in the courtroom.  And if your Honor

17 wouldn't mind, I'd like to to give him a quick phone call

18 while I'm on mute to speak with him before he addresses the

19 Court if that's okay.  If it's not, I understand the situation

20 that we're in.

21      THE COURT:  Mr. Celli, I think that's in your

22 interest.  So may I ask that both of you mute yourselves and

23 the rest of us on the line will stay here but don't interfere

24 with the video portrait over here.  If we lose you, we may

25 never get you back.

1       MR. SILVERMAN:  Thank you, your Honor.

2       THE COURT:  Take a moment to speak among yourselves.

3  Thank you.

4       (A brief pause in the proceedings was held.)

5       MR. SILVERMAN:  Thank you very much, your Honor.  I

6  appreciate the Court's indulgence and Mr. Celli would like to

7  address the Court very briefly.

8       THE COURT:  Okay, Mr. Celli, the floor is yours.

9       THE DEFENDANT:  So, your Honor, I know you believe

10  that there was no news coverage, there was news coverage.  My

11  personal health information was given to a news reporter.  The

12  only two people who have my health information were

13  Ms. Olivera and Ms. Bensing.  I still don't have it, yet, a

14  news reporter has it.  So there is an issue there in itself,

15  number one.  And I believe that was prejudiced by certain

16  things and I wrote it in the letter, and when you get it

17  you'll read it.

18       THE COURT:  Thank you, Mr. Celli.  Look, I

19  appreciate that.  What hasn't been shown to me, though, is

20  that to the extent there may have been a dab of news coverage

21  here or there, that it is in any way of the scale or nature

22  likely to prejudice the jury panel.  It seems to me that there

23  is that supposition is highly conjectural and improbable.

24  This is a far cry from the type of case in which one worries

25  about saturated news coverage making it impossible to find 12

1  fair jurors and two fair alternates.

2  So with that, Mr. Silverman, I want to make sure I

3  think that the period of time I've allocated which is five

4  months from now ought to give you plenty of time to seek an

5  expedited review before the Circuit and I welcome your trying

6  to do so.  But the onus then is on you to do so and to let the

7  Circuit now of the May 17th trial date when it's set so that,

8  to the extent that they are sensitive to the trial date, they

9  organize their affairs accordingly.

10  MR. SILVERMAN:  Understood, your Honor, we

11  appreciate that.

12  And along those lines, I just want to ask.  I

13  wouldn't usually do this on the record, but since I do not

14  have an eVoucher account for this case yet there is some

15  complication with the visiting judge phenomenon.  I would like

16  to orally request an expedited copy of the transcript so that

17  the court reporter, Mr. Anthony Frisolone, can have assurance

18  that he will be compensated when I request the expedited

19  transcript.

20  THE COURT:  Yes, granted.  I authorize the receipt

21  by Mr. Silverman of the expedited transcript.  And my

22  statement on the record should give the court reporter and

23  counsel full comfort that I will authorize that request.

24  MR. SILVERMAN:  Thank you, your Honor.

25  THE COURT:  With that, my inclination is not to set

1  another conference in the date until about a month before

2  trial.  Were I to be told by defense counsel that some

3  resolution of the pretrial motions in limine here was apt to

4  shape plea bargaining or something like that, I would happily

5  move up that conference or create another conference to

6  resolve a critical motion like that.  But having not heard

7  that, my inclination is to put this off till April.  That

8  gives the defense an opportunity to get before the Circuit

9  without needlessly resolve that may not be mine to make if

10 this proves successful.  And in the event that, for example, a

11 deferred prosecution agreement were to be made and respected,

12 all the better not to have that conference.

13        So may I suggest we have a conference -- one moment.

14        Friday, April 16th.  Any reason why that does not

15 work for Counsel?

16        MR. SILVERMAN:  No, Your Honor.

17        MS. KARAMIGIOS:  No, Your Honor.

18        THE COURT:  Friday, April 16th.  I'm going to put it

19 in the afternoon.  If we are still doing COVID-era scheduling,

20 detained defendants tend to take priority in the morning.  So

21 why don't we say 2:00 p.m. Friday, April 16th, for our next

22 conference.

23        MS. KARAMIGIOS:  That works for the Government, your

24 Honor.

25        THE COURT:  Mr. Silverman, does that work for you?

1    MR. SILVERMAN:  And the defense, thank you, your

2 Honor.

3    THE COURT:  Ms. Karamigios, can you remind me when

4 time excluded until?

5    MS. KARAMIGIOS:  I believe it was excluded until

6 today, your Honor.

7    THE COURT:  Very good.  I have nothing further save

8 I have just a question about the area of motions in limine

9 which I'll get to in a moment just to help frame my

10 understanding of one of the motions.

11    But before we get there let me just, since we're

12 talking about the schedule, is there an application to exclude

13 time until the trial date or until the next conference,

14 Ms. Karamigios?

15    MS. KARAMIGIOS:  Yes, Your Honor.  The Government

16 would make an application to exclude until the next status

17 conference to enable the parties to continue discussing a

18 disposition and to review discovery in furtherance of that

19 goal and it prepare for trial.

20    THE COURT:  I would add as well to permit the

21 defense to pursue appellate remedies as

22 Mr. Silverman Silverman indicates he may wish to do.

23    MS. KARAMIGIOS:  Yes, Your Honor.  Thank you.

24    THE COURT:  Mr. Silverman, is there any objection?

25    MR. SILVERMAN:  No objection.  Thank you.

1    THE COURT:  I'll exclude the time between today and

2  April the 16th pursuant to Title 18, United States Code,

3  Section 3161(h)(7)(a).  I find that the interest of justice

4  outweigh the interest of the public and the defense in a

5  speedy trial.  In particular, the excluded time is intended to

6  give the defense time to take care of important things.  The

7  defense, I understand, is exploring a potential deferred

8  prosecution application, and there may be as well discussions

9  about potential disposition either consistent with that or

10  taking some or form.  The defense has expressed an interest in

11  proceeding by mandamus to challenge the Court's denial of the

12  transfer and change of venue and recusal motions that I

13  addressed earlier.  It is also not lost on me that

14  Mr. Silverman remains new to the case and there's a value in

15  letting the relationship between him and Mr. Celli and his

16  continued understanding of the facts and circumstances of the

17  case develop.  And so, for all of these reasons I think time

18  is swell worth excluding until the next conference.  And I

19  find it excludable ground I recited.  The.

20      Final question I just wanted to raise in involved

21  the issue of the background from the prior case.  I just want

22  to, we're not arguing the point, I just want to get a tactile

23  sense from each of you how that evidence would come in.

24      Ms. Karamigios, I read from your suppression motion

25  the -- somebody needs to let the dog out.  I'm hearing a dog

1   in the background.

2           MS. KARAMIGIOS:  I'm sorry.  My boyfriend is trying

3   to keep him quiet but it's a small apartment.

4           THE COURT:  Understood.  Maybe while you're not

5   speaking just stay on mute, Ms. Karamigios.

6           I understand that you have limited bits of context

7   from the two civil litigations that you would like to bring to

8   bear.  By what means would you anticipate doing that?  Who is

9   the witness?  How would you go about getting that in?

10          MS. KARAMIGIOS:  Thank you, your Honor.  So I'll

11  start at the beginning by saying that the trial strategy is

12  still very much in flux, so I'm not sure that I can commit to

13  exactly how to admit the evidence.  I think there might be an

14  argument that it's judicially noticeable that the cases were

15  dismissed against the defendant, and maybe we could obtain a

16  stipulation from defense and obviate the need for a witness at

17  all.

18          Otherwise, I might anticipate -- I'm calling a

19  member of the clerk's office.  If the Court is wondering

20  whether we intend to cal the judges at this time, we do not

21  intend to call the victim judges and would attempt to get that

22  evidence in by some other means.

23          THE COURT:  So the possibilities would be judicial

24  notice, if appropriate, a stipulation if agreed to, or in

25  effect, an administrative or a clerical witness to

1  authenticate documents or portions of the documents that are

2  on those records.

3          MS. KARAMIGIOS:  Yes, Your Honor.

4          THE COURT:  You're not, I take it, then envisioning

5  a fact witness in the classic sense of somebody who gives

6  touch and feel to what was going on in the civil litigation,

7  somebody who can give a contextual narrative.

8          MS. KARAMIGIOS:  No, Your Honor, we are not.

9          THE COURT:  Okay.  All right.  And so, your

10  expectation is that without a witnesses who is giving that

11  kind of color, if you will, you would get into the record if

12  upheld essentially a handful of key documents in the case, and

13  from that argue the points that you would you intend vis-à-vis

14  relevance e.g., that there had been adverse rulings, the

15  adverse rulings took a particular form, that the litigations

16  could be inferred not to be going well for Mr. Celli's

17  perspective.

18          MS. KARAMIGIOS:  That's exactly right, yes.

19          THE COURT:  Mr. Silverman, putting aside issues of

20  evidentiary admissibility as to all that.  If you had your

21  way, and you were presenting the fuller narrative of the two

22  civil litigations, how would envision actually doing it in

23  court.

24          MR. SILVERMAN:  Thank you, your Honor.

25          One possibility is that the defendant would testify

1   about his experiences and about what was motivating him.  And

2   another is that much like Ms. Karamigios, we would seek

3   judicial notice that certain documents were filed just as

4   offer of proof of the filing, or that the claims were made to

5   serve the purpose of explaining of the background.

6          It's possible that within the scope of a potential

7   in limine ruling that the parties would be able to work out,

8   as Ms. Karamigios mentioned, a stipulation on that evidence.

9   I should note that Mr. Celli, on this issue, would add the

10  strenuous view that this should all encompass the substance of

11  the underlying motions, much of which would have to -- the

12  underlying civil case much of it would have to come in through

13  his testimony.

14         THE COURT:  Understood.  Assuming that you observe

15  the ability not to call Mr. Celli and to present this

16  narrative in a means that didn't expose him to

17  cross-examination, one thing I didn't hear you say,

18  Mr. Silverman, is that you had in mind calling some other case

19  participant.

20         MR. SILVERMAN:  Your Honor, Mr. Celli's raised with

21  me the possibility of a very significant number of subpoenas

22  to serve on third-parties, and that that bridge has not been

23  crossed yet.  My expectation is that by the time we got to

24  trial, we would get to the point where we would work this out

25  between the parties.  But I have the -- but it is on the

1  possible agenda that there could be a very significant number

2  of third-parties subpoenas ad testificandum for testimony

3  about these matters.

4          THE COURT:  Am I right to recall that Celli is pro

5  se in both matters, or did a potential witness -- to give

6  broader latitude to give a narrative that you envision.

7          MR. SILVERMAN:  He was represented at first and

8  eventually went pro se.

9          THE COURT:  But as of the time of some of the

10  adverse events that are at issue in those litigations, was he

11  still pro se?

12          MR. SILVERMAN:  He was pro se, yes.

13          THE COURT:  He was pro se.  So counsel for him as a

14  potential narrator of relevant events could only get partway

15  down the chronology.

16          MR. SILVERMAN:  That's right, your Honor.

17          THE COURT:  Is there any other participant who you

18  envision being able to tell the -- to elicit the central

19  ingredients of the -- of those cases as Mr. Celli would like

20  to the extent that Mr. Celli would like to present that

21  background.

22          MR. SILVERMAN:  There's a possibility of calling

23  adverse witnesses but that's not something that I've discussed

24  with Mr. Celli at this time.

25          THE COURT:  Is there any credible argument for

1   calling either Judge Cogan or Judge Brodie that the defense is

2   pursuing?

3          MR. SILVERMAN:  I haven't discussed that matter with

4   Mr. Celli at this time.

5          THE COURT:  In theory, you might be reserving the

6   right to call them as your narrative witnesses.  I take it

7   that's not something that is a likely outcome.

8          MR. SILVERMAN:  It's certainly not something that I

9   have planned.  I believe there are other adverse witnesses who

10  could be called to provide similar narratives, even their

11  deputies or law clerks.  And I had been thinking of other

12  adverse witnesses excluding the Government.  There was

13  opposing counsel, there were other people who had familiarity.

14  If we got to the point where we had to where that evidence was

15  coming in, then there would potentially be third-party

16  subpoenas for testimony.

17         THE COURT:  Okay.  And so, and to the extent that

18  the judges are the asserted recipients of the e-mails here, do

19  you see any, as opposed to being called to attest to the

20  narratives of what happened here in the civil cases,

21  Mr. Silverman, do you see any basis for calling the judges as

22  to that?  They're not there to interpret or -- and they're not

23  necessarily, I take it, to authenticate.  Is there any

24  scenario in which you would be calling another judge?

25         MR. SILVERMAN:  As I sit here right now, I don't see

1   scenario in which we call the judges to testify.  But this is

2   a matter that Mr. Celli and I need to discuss further.

3           THE COURT:  Okay.  All right.  Very helpful.

4           That was the main area I just wanted to pursue as

5   April 16th draws closer.  It may be that I issue an order or

6   two seeking clarification on some point embedded in one of the

7   motions, and it's also a possible that I will commission a

8   brief conference in order to engage with you in the same

9   spirit that I'm doing now vis-à-vis issues bearing on

10  resolution of all the motions.

11          All right.  With that, let me just confirm that I've

12  covered everything that I have.

13          Ms. Karamigios, anything further from the

14  Government?

15          MS. KARAMIGIOS:  Nothing further from the

16  Government, your Honor.

17          THE COURT:  Anything further from the defense?

18          MR. SILVERMAN:  Yes, a few small applications, your

19  Honor.  One is with the consent of the Government and Pretrial

20  Services, I would like to obtain a modification to Mr. Celli's

21  bail conditions to allow him to provide documents to his

22  brother and sister-in-law to e-mail to counsel.  We're now in

23  a motion where in-person meetings are difficult.  Our last

24  meeting was shivering at an outdoor pizza parlor.  Snail mail

25  comes to my office where I'm not here every day.  And so,

1    communicating by the U.S. mail puts a strain on passing things

2    like the CARES Act waiver back and forth, or a HIPAA waiver,

3    or other basic documents.  So I would ask without objection

4    that Mr. Celli be allowed to provide documents to his brother

5    and sister-in-law only to his lawyers.

6              THE COURT:  So he would be providing to them in a

7    hard copy, old fashioned way and they would be e-mailing them

8    to you?

9              MR. SILVERMAN:  Yes, Your Honor.

10             THE COURT:  Ms. Karamigios, are you okay with that?

11             MS. KARAMIGIOS:  Yes, I am.

12             THE COURT:  I will approve that.  And so, my oral

13   permission right now carries the day.  But in the interest of

14   making sure that there's a very clear written record and the

15   names are set out, Mr. Silverman would you kindly give me

16   letter and I will so order it.

17             MR. SILVERMAN:  I will.  Two other matters in

18   response to one of your Honor's questions.  And I apologize to

19   Ms. Karamigios, I should have raised this with her.  But if

20   the Government is going to pursue a recklessness instruction,

21   jury instruction, that is something that we should set a

22   schedule to litigate.  And she may not be ready to say that

23   but that is something that we might want to really brief

24   because that is a significant open legal question that would

25   have a very significant impact on this case.

1      THE COURT:  Explain to me what the recklessness

2 debate would be.

3      MR. SILVERMAN:  So, your Honor, it comes from

4 Justice Alito's dissent in the *Alonus* case.  That's the

5 Supreme Court case that read the scienter requirement for

6 §875(c) and the Chief Justice opinion left it to another day

7 whether recklessness, knowledge of a high likelihood that

8 somebody would pursue this as a threat would be a viable

9 instruction for this statute.

10      I understand from the Government's in limine motion

11 the they quote the Sand instruction which we think doesn't

12 encompass the recklessness charge.  But if the Government were

13 to pursue a recklessness charge, that would be something that

14 we should litigate in advance of the April 17th conference

15 because it would be more than a discrete jury charge dispute.

16 It would be quite a significant legal issue.

17      THE COURT:  Would that implicate the scope of

18 evidence being received, or would it just implicate the

19 instruction and counsel's argument?

20      MR. SILVERMAN:  Potentially both.  I haven't talked

21 to the ramifications of what that charge would mean in terms

22 of -- and would broaden the ability of the Government to admit

23 evidence, I presume.  Because, you know, what he should have

24 known encompasses a lot more information.  But it would also

25 just be a significant.  And your Honor asked are there legal

1  issues that are significant to the outcome of the case.  If

2  the Government were to pursue a recklessness instruction, that

3  would be a significant legal issue weighing on the outcome of

4  the case.

5          And as I said, I apologize to Ms. Karamigios I

6  haven't raised this with her, so I'm putting her on the spot

7  so she may not ready to respond.  That's one of two things.

8          The other is an important in limine motions we have

9  the primary defense in limine which is about Mr. Celli's

10  March 2018 statements which we've offered, or want to offer,

11  under Rule 8033.  And in response your Honor's question about

12  limine motions that we think are very significant that is one

13  that I would respectfully raise.  But, of course, it's not the

14  only motion we've made and it's only in response to the

15  Court's questions.  I do not think that the resolution of the

16  in eliminate motion would have an impact on the outcome of

17  this case but your Honor asked.

18          THE COURT:  The outcome of?

19          MR. SILVERMAN:  Whether -- correct.

20          THE COURT:  Okay.  As to recklessness, it seems to

21  me worth your having a line of communication open with

22  Ms. Karamigios.

23          Ms. Karamigios, without holding you to this, it

24  seems to have come out of the blue, I take it that the current

25  expectation would be to use the Sand instruction which does

1  not have a recklessness option.

2        MS. KARAMIGIOS:  That is my current expectation.

3  I'm only hearing about this now so I haven't had a chance to

4  really look into it.  I'm happy to do so as quickly as I can

5  and get back to defense counsel on that.

6        THE COURT:  Why don't counsel meet and confer.  Meet

7  these days sounds like a bad idea, but why don't you confer.

8  And in the event that you part company on that, arrange

9  amongst yourselves an exchange of letters that reaches me at

10  least a month before April 16th and I will add that to the

11  motion in limine pile.  It doesn't sound right now that that's

12  actually a live issue.

13        MR. SILVERMAN:  Thank you, your Honor.

14        THE COURT:  Mr. Silverman, anything further from

15  you?

16        MR. SILVERMAN:  I see Mr. Celli is raising his hand,

17  your Honor, and I apologize.  But if I could just chat with

18  him before he addresses the Court.  Thank you.

19        (A brief pause in the proceedings was held.)

20        MR. SILVERMAN:  Thank you, your Honor.  Mr. Celli

21  has asked me to convey to the Court that it is his

22  understanding that the Assistant United States Attorneys in

23  this case have in the past worked for the courthouse.  I have

24  also worked for the courthouse at one point in the past.  In

25  terms of the conflict that Mr. Celli would like to pursue in

1  mandamus, he has asked me to raise that.

2       I see Mr. Celli talking.

3       THE DEFENDANT:  It's recusal because they the signed

4  executive order from Trump and they're prohibited -- two-year

5  ban from the prior employer.

6       THE COURT:  All right.

7       THE DEFENDANT:  That's in my letter as well.

8       THE COURT:  Mr. Silverman, in the event that I

9  receive a motion, I'm happy to consider it.  But at this

10  point, there's nothing before me.

11       MR. SILVERMAN:  Thank you, your Honor.

12       THE COURT:  Before we adjourn, I understand from

13  each of you there's no further business to attend you to.  I

14  look forward to seeing you on April 16th and for our trial on

15  May 17th if the case doesn't resolve itself by other means

16  beforehand.

17       A couple of things.  First of all, I do encourage

18  counsel to keep the lines of communication open about seeing

19  whether there is a way resolving this short of trial.

20       Second of all, it's mid-December, I want to wish

21  everybody a healthy and Happy New Year and I express for all

22  of you the hope for everybody in our world but including you

23  all and the people close to you that next year be a much

24  happier and less eventful year than this.

25       All right.  Very good.  We stand adjourned.  Happy

1  New Year everyone.

2          MS. KARAMIGIOS:  Thank you.

3          MR. SILVERMAN:  Thank you.

4          THE DEFENDANT:  You, too, your Honor.

5          (WHEREUPON, this matter was adjourned.)

6

7                      *   *   *

8          <u>CERTIFICATE OF REPORTER</u>

9

10 I certify that the foregoing is a correct transcript of the
   record of proceedings in the above-entitled matter.

11

12

13

14

15 _____

16 Anthony D. Frisolone, FAPR, RDR, CRR, CRI
   Official Court Reporter

17

18

19

20

21

22

23

24

25