UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**ANTHONY SALVATORE PERRI** | No. 1:25-cr-00279 (SRU) |

## ORDER DENYING MOTION TO TRANSFER VENUE

The government has charged Anthony Perri with two counts of threatening a United States judge in violation of 18 U.S.C. §§ 115(a)(1)(B), 115(b)(4) and 3551. Indictment, Doc. No. 11. On October 24, 2025, Perri filed the instant motion to transfer venue from the EDNY to the District of Connecticut. *See* Mot. to Change Venue, Doc. No. 17.

For the following reasons, Perri's motion is **DENIED**.

**I.      Background**

On Saturday, August 2, 2025, Perri allegedly left threatening voicemails at the chambers of two judges who sit in the United States District Court for the Eastern District of New York ("EDNY"). Compl., Doc. No. 1, at 2-3. He allegedly made his phone calls from Washington, D.C., where he was soon arrested. *See* Mem. in Opp. re Mot. to Change Venue, Doc. No. 19, at 2. After his arrest, Perri was removed to the EDNY, where he was indicted, arraigned, and ordered detained. *Id*. at 3.

The government attached a letter to the Indictment explaining that because Perri had threatened to murder multiple judges in the Eastern and Southern Districts of New York, "reassignment of this case to a U.S. District Judge from within the Second Circuit but outside of the Eastern or Southern Districts of New York may be appropriate." Letter Re: *United States v. Anthony Salvatore Perri*, Doc. No. 11-2, at 1. Shortly thereafter, on September 19, 2025, the

case was reassigned to me.  At a telephonic status conference held on October 2, 2025, I reiterated that I intend to hold trial at the EDNY Courthouse in Brooklyn, New York.  Min. Entries dated Oct. 2, 2025; *see also* Pretrial Order, Doc. No. 16.

On October 24, 2025, Perri filed the instant motion to transfer venue from the EDNY to the District of Connecticut.  *See* Mot. to Change Venue, Doc. No. 17.  In support of his motion, Perri argues that he would be prejudiced if his trial takes place in the same courthouse that was the target of his alleged threats.  Mem. of Law in Supp. of Mot. to Transfer Venue, Doc. No. 17-1, at 2.  He additionally notes that he is experiencing harassment at the Metropolitan Detention Center ("MDC"), where he is awaiting trial.  *Id*. at 6.

## II.     Discussion

Venue lies "in a district in which the offense was committed."  Fed R. Crim. P. 18. Offenses committed in multiple districts "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  Perri allegedly left threatening voicemails at the chambers of two district court judges in the EDNY.  Although he was physically present in Washington, D.C. at the time of those alleged calls, the outgoing calls "were crucial components of" the charged offenses.  *See United States v. Stephenson*, 895 F.2d 867, 874 (2d Cir. 1990).  As an initial matter, then, venue in the EDNY is proper.

"As a general rule, criminal prosecutions should be retained in the district in which they were initially filed." *United States v. Flom*, 2015 WL 6506628, at *2 (E.D.N.Y. Oct. 27, 2015). However, a defendant may move to transfer venue according to Fed. R. Crim. P. 21(a) or 21(b). The defendant has the burden of justifying a transfer of venue under either rule.  *See United States v. Salim,* 151 F. Supp. 2d 281, 282 (S.D.N.Y. Mar. 29, 2001) ("A defendant making a pre-voir dire [Rule 21(a)] motion to change venue is faced with a difficult burden . . . ."); *United*

2

*States v. Larsen*, 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014) (addressing substantial burden faced by defendants raising a Rule 21(b) motion). It is "not often" that a defendant can meet the significant burden under Rule 21(a) or 21(b). *See United States. v. Rinsch*, 2025 WL 2972226, at *10 (S.D.N.Y. Oct. 22, 2025) (quoting *Larsen*, 2014 WL 177411, at *2).

Perri argues for a venue transfer under both Rule 21(a) and 21(b). Each provision is addressed in turn below.

    a) **Rule 21(a)**

Rule 21(a) of the Federal Rules of Criminal Procedure requires a court to transfer a proceeding against a defendant to "another district if the court is satisfied that so great a prejudice against the defendant exists" that "the defendant cannot obtain a fair and impartial trial" in the original venue. Although the defendant carries the burden of showing "a reasonable likelihood that [prejudice] … will prevent a fair trial" in the current venue, *United States v. Gunn*, 2022 WL 17250494, at *1 (E.D.N.Y. Nov. 28, 2022) (internal citation omitted),"[t]he ultimate determination of whether a fair trial is unlikely 'is committed to the district court's discretion.'" *United States v. Prado*, 2011 WL 3472509, at *13 (E.D.N.Y. Aug. 5, 2011) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 967 (2d Cir. 1990)).

District courts have been reluctant to grant a transfer of venue under Rule 21(a) before jury selection. *See United States v. Volpe*, 42 F. Supp. 2d 204, 218 (E.D.N.Y. 1999) (collecting cases). The same courts have held that whether a fair trial is possible in a particular venue "is best determined during or after voir dire examinations," not before, because "[c]areful voir dire questioning is a recognized and effective tool to uncover bias." *Id*. at 218; *see also United States v. Skelos*, 2018 WL 2849712, at *8 (S.D.N.Y. June 8, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021) (internal citation omitted) ("[T]he key to determining the appropriateness of a change of venue is

3

a searching voir dire of the members of the jury pool."). Accordingly, defendants who file Rule 21(a) motions prior to jury selection carry an even higher burden than the one outlined above: they must show that "prejudicial publicity so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *Volpe*, 42 F. Supp. 2d at 216 (internal citation omitted).

    Criminal defendants have met their high burden in cases "where the potential trial atmosphere [was] utterly corrupted by press coverage, or where alleged community bias is so pervasive and prejudicial as to have created a reasonable likelihood that a fair trial could not be conducted, or where the threats involved members of the judiciary who may be involved with trying the case." *Gunn*, 2022 WL 17250494, at *2 (cleaned up). But those cases are exceptional. Press coverage will hardly ever be enough to justify a transfer of venue. *See, e.g., Skilling v. United States*, 561 U.S. 358, 380 (2010) ("[O]ur decisions cannot be made to stand for the proposition that juror exposure to news accounts of the crime alone presumptively deprives the defendant of due process.") (cleaned up); *United States v. Sabhnani*, 599 F.3d 215, 233 (2d Cir. 2010) ("Coverage of actual developments in a criminal case generally will not rise to the level of prejudicial publicity that will warrant a venue change."). Similarly, courts have repeatedly expressed doubt that pervasive bias can overwhelm a jury pool in a large metropolitan area like New York City. *See United States v. Ayala*, 64 F. Supp. 3d 446, 452 (E.D.N.Y. 2014) (noting that there are eight million people in the EDNY jury pool); *United States v. Awadallah*, 457 F. Supp. 2d 246, 254 (S.D.N.Y. 2006) (explaining that New York's diverse population is "able, if not better suited, to rise to the occasion of trying [a] case with an open mind" than alternative venues).

4

Perri has moved—pursuant to Rule 21(a)—to transfer venue prior to voir dire. His argument centers on the third category of cases detailed above. On the surface, that makes strategic sense. He cannot avail himself of the press coverage angle, because very few news articles detailing the charges against him have been published. *See Ayala*, 64 F. Supp. 3d at 451. It would also be "illogical to conclude that any media accounts . . . could somehow prejudice potential jurors against [Perri] in Brooklyn" but not in Bridgeport, Connecticut, which is part of New York City's metropolitan area. *See United States v. Wright*, 603 F. Supp. 2d 506, 508 (E.D.N.Y. 2009). The second category of cases is similarly unavailing to Perri; after all, it is difficult to argue that the potential for pervasive jury bias would be more likely in the combined area of Brooklyn, Staten Island, and Queens than in Bridgeport. *See Volpe*, 42 F. Supp. 2d at 218 (citing *United States v. Dioguardi*, 428 F.2d 1033, 1039 (2d Cir. 1970)) (explaining that Rule 21(a) motions are especially unlikely to be granted in New York City, because transfer from a metropolitan area to "a smaller city may result in more rather than less intensive publicity").

Instead, Perri argues for a venue transfer because his case is "nearly identical" to *United States v. Turner*, 2009 WL 2870627 (N.D. Ill. Sept. 8, 2009). *Turner* also involved a defendant charged with threatening multiple federal judges. The similarities stop there. Whereas the district court judge who granted the venue transfer in *Turner* worked in the same building as the judges who were threatened in that case, *id*. at *3, I do not work in the EDNY's Brooklyn Courthouse and will only sit there for the duration of the trial. Unlike in *Turner*, furthermore, this case has already been reassigned to a judge outside of the targeted district. More significantly, *Turner* involved a concern over "widespread media coverage" that does not exist to the same extent here; in that case, the district court judge noted that the husband and mother of

5

another district court judge in the same courthouse had recently been murdered and that their murders would be in the mind of potential jurors. *Id*. But as the government points out, no similar tragedy has occurred recently in the EDNY. *See* Mem. in Opp'n re Mot. to Change Venue, Doc. No. 19, at 8.

Perri further argues that "[t]he overlap between the allegations and the EDNY contributes to an environment of likely hostility" and "raises serious concerns surrounding perceptions of fairness." *Id*. at 4. In support of this, he notes that the government intends to call witnesses from the chambers of the threatened EDNY judges and to rely upon investigation reports written by U.S. Marshals from the same district. He also complains of the risk of prejudice that will arise from those U.S. Marshals being "responsible for Mr. Perri's custody and transportation throughout these proceedings." *Id*. I reject Perri's argument that the U.S. Marshals will treat him differently than other defendants. As Judge Vitaliano wrote in response to a similar argument made on a motion to transfer venue:

> [N]o one has encountered anything but the highest level of professionalism and ethical conduct from the marshals and other Eastern District personnel. Simply put, the Court rejects as totally unfounded even the mere thought that the men and women responsible for the administration of justice in our courthouse would handle [the defendant's] case differently than they would any of the other hundreds of cases which pass through the Court's doors—that is, with courtesy, efficiency, fairness and a commitment to protect the rights of all.

*Wright*, 603 F. Supp. 2d at 508.

### b) Rule 21(b)

Rule 21(b) of the Federal Rules of Criminal Procedure allows a court to transfer a proceeding against a defendant "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Just as with Rule 21(a), the defendant "bears the burden of justifying a transfer under Rule 21(b)." *Flom*, 2015 WL 6506628, at *2 (citing *United States v.*

6

*Cournoyer*, 2012 WL 6539659, at *6 (E.D.N.Y. Dec. 14, 2012)). To meet that burden, a defendant must show that a trial in the transferring venue "would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." *Id*. (citing *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964)).

The Second Circuit has instructed district courts to assess Rule 21(b) motions using the ten factors outlined in *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240 (1964) ("*Platt* factors"). *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). The *Platt* factors look at: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of the events likely to be at issue; (4) the location of relevant documents and records; (5) the potential for disruption of the defendant's business if transfer is denied; (6) the expenses to be incurred by the parties if transfer is denied; (7) the location of defense counsel; (8) the relative accessibility of the place of trial; (9) the docket conditions of each potential district; and (10) "any other special circumstance that might bear on the desirability of transfer." *Platt*, 376 U.S. at 243-44. "No one factor is dispositive; rather, the court must try to strike a balance and determine which factors are most important." *Flom*, 2015 WL 6506628, at *3 (internal citation omitted). Moreover, district courts in the Second Circuit typically "consider[] the effect of transfer on both parties," meaning that each factor should be examined in relation to the burden that transfer would have on *both* the government and the defendant, rather than just the moving party. *See id*. at *3 (citing *Stephenson*, 895 F.2d at 875).

The first and fifth factors—the location of the defendant and any potential disruption on the defendant's business—do not weigh in favor of transfer. It is unclear whether Perri is even employed. *See United States v. Canale*, 2015 WL 3767147, at *5 (S.D.N.Y. June 17, 2015)

7

("Defendant [] has not represented that any business or profession with which he may be involved would be disrupted if he were tried in this district."). Although district courts in the Second Circuit "have recognized a policy of trying defendants where they reside where possible," *id*., Perri is not a resident of his desired venue, Connecticut. Furthermore, even if Perri were a resident of Connecticut, "any inconvenience" experienced by Perri having his case heard in the EDNY "is reduced by the fact that the trial is unlikely to last more than a week." *Id*.

Whereas the previous factors are at best neutral towards transfer, the third and ninth factors weigh against transfer in this case. "The victims, witnesses, and relevant exhibits in this case" are all in the EDNY. *Gunn*, 2022 WL 17250494, at *2. As a result, there is no jurisdiction other than the EDNY—with the potential exception of the District of Columbia, where Perri allegedly initiated the threatening phone calls—that is a more appropriate venue for this case. Perri does not allege any connection between the facts of this case and the District of Connecticut. *See Canale*, 2015 WL 3767147, at *4 ("As to location of documents, the Court has no reason to believe that a significant number of relevant documents are located in Kentucky" when the heart of the case occurred in California and New York). Perri also admits there are no issues regarding the EDNY's docket conditions. *See* Def.'s Mem. of Law in Supp. of Mot. to Transfer Venue, Doc. No. 17-1, at 6 ("[T]he 'accessibility' and 'docket conditions' of the Brooklyn and Bridgeport courthouses are equivalent.").

The second, sixth, seventh, and eighth factors are similarly unhelpful to Perri. For Perri to succeed under the second factor—the location of possible witnesses—he must "specifically describe how particular witnesses would be entirely prevented from testifying at trial" in the EDNY. *See id*. at *10 (internal citation omitted). Perri fails to satisfy his burden on this factor; although he expresses concern with EDNY employees testifying at a trial held in an EDNY

8

courtroom, he does not "offer concrete examples of expected testimony" on his behalf or "demonstrate that he is financially incapable of paying [his] witnesses' travel expenses" to the EDNY. *See United States v. Cournoyer*, 2012 WL 6539659, at *6 (E.D.N.Y. Dec. 14, 2012). A fundamental issue for Perri on the second factor is that it is not clear whether he intends to call any witnesses at all. Perri similarly fails on the sixth factor, because he provides no evidence that he would be financially burdened if the case remained in the EDNY. In contrast, the government would be forced to "shoulder the lion's share of costs" if it were required to relocate its legal staff and all its witnesses to the District of Connecticut. *See Rinsch*, 2025 WL 2972226, at *11. Combined with the fact that Perri's attorney is in New York, the burden that transfer would impose on both parties means that the seventh and eighth factors must be weighed against Perri. *See Cournoyer*, 2012 WL 6539659, at *7-8.

The only *Platt* factors that are potentially helpful to Perri are the fourth and tenth factors. The fourth factor is not especially important because the "'conveniences of modern transportation and communication'" make the precise location of the documents at issue "a minor concern." *Rinsch*, 2025 WL 2972226, at *11 (quoting *United States v. Kolfage*, 2020 WL 7342796, at *4 (S.D.N.Y. Dec. 14, 2020)). Regarding the tenth factor, it is relevant that Perri described at length in a telephonic status conference held on October 2, 2025 that he is facing harassment by other inmates in the MDC who have learned about his prior legal troubles. Min. Entries dated Oct. 2, 2025; *see also* Pro Se Mot. for Change of Venue, Doc. No. 24, at 1 (describing "abuse" experienced by Perri in the MDC). He further notes in his motion that at least one district court judge in the EDNY has referenced the dangerous conditions faced by inmates in the MDC. Def.'s Mem. of Law in Supp. of Mot. to Transfer Venue, Doc. No. 17-1, at 6. Although I empathize with Perri's situation and acknowledge the pervasive issues plaguing

the MDC, the fact that two factors favor transfer—when the other eight *Platt* factors are unhelpful to his motion—is not enough to tilt the scales in his favor on his Rule 21(b) motion.

### III.      Conclusion

For the foregoing reasons, Perri's motion to transfer venue, Doc. No. 17, is **DENIED**.

SO ORDERED at Bridgeport, Connecticut this 17th day of November 2025.

/s/ STEFAN R. UNDERHILL  
Stefan R. Underhill  
United States District Judge
